UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PAUL TOPOLSKI,

                      Plaintiff,

        -against-                                     5:13-CV-0872 (LEK/DEP)

SUSAN WROBLESKI; *et al.*,

                      Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

In this civil rights action, Plaintiff Paul Topolski ("Plaintiff") alleges that his former in-laws, Defendants Susan Wrobleski ("Ms. Wrobleski") and Michael Wrobleski ("Mr. Wrobleski") (collectively, "the Wrobleskis"), along with other individuals and entities, have deprived him of his parental and other constitutional rights. See generally Dkt No. 1 ("Complaint") at 3-4. Presently before the Court are: (1) Plaintiff's Motion for a preliminary injunction preventing the Wrobleskis from dissipating assets Plaintiff alleges will be needed to satisfy a judgment in this case and restraining the Wrobleskis and Defendant Aliza Steemrod ("Steemrod") from falsely reporting that Plaintiff is mistreating his children or driving while intoxicated; and (2) a Report-Recommendation issued by the Honorable David E. Peebles, U.S. Magistrate Judge, recommending that Plaintiff's claims against the State of New York be dismissed on sovereign immunity grounds. Dkt. Nos. 2 ("PI Motion"); 5 ("Report-Recommendation). For the following reasons, the PI Motion is denied and the Report-Recommendation is adopted in full.

**II.    BACKGROUND**

On July 24, 2013, Plaintiff filed the PI Motion and the Complaint, which brings claims

under 42 U.S.C. § 1983. See generally Compl. He alleges that the Wrobleskis have engaged in a "continuous conspiracy for the purpose of depriving [P]laintiff of his parental rights and his right to life and liberty." Id. at 3. According to Plaintiff, the Wrobleskis began plotting in 2000 to have his children taken from his custody. Id. at 4. The Wrobleskis proceeded to lodge a number of putatively baseless complaints with Defendant Onondaga County Child Protective Services ("CPS") regarding Plaintiff's treatment of his children. Id. In 2000, Mr. Wrobleski allegedly followed Plaintiff around "in disguise" and made false reports to the Cicero Police Department that led to Plaintiff's arrest for driving while intoxicated ("DWI") and endangering his children's welfare, although the charges were later dismissed for "legal insufficiency." Id.

In 2003, Plaintiff's children were placed in the Wrobleskis' care after the Wrobleskis reported that Plaintiff had left the children alone; Plaintiff claims that his babysitter was late and his girlfriend's daughter watched the children until the babysitter arrived. Id. In 2008, following Plaintiff's release from prison on DWI charges, the Onondaga Family Court issued an order giving Plaintiff certain visitation rights with his children. Id. at 4-5.

In August 2009, Ms. Wrobleski, even though she knew that Plaintiff had been in regular contact with his children, reported otherwise to the Orchard Park Police Department ("Orchard Park") and requested that Orchard Park perform multiple "welfare checks" on Plaintiff. Id. at 5. The following month, Plaintiff was arrested for DWI, which he claims was the result of four calls from the Wrobleskis to Defendant Onondaga County Department of Emergency Communications ("Emergency Communications") operators: one by Mr. Wrobleski, who "stalked" Plaintiff in disguise on the highway, and three by Ms. Wrobleski from her home phone. Id. at 5-6. Plaintiff alleges that he was then assaulted by the Cicero police officers who responded to the Wrobleskis'

2

calls. Id. at 5-6.

In September 2012, a custody hearing regarding Plaintiff's daughter was held at the Onondaga County Courthouse. Id. at 9. Plaintiff alleges that Defendant Zachary L. Karmen, the law guardian appointed to represent Plaintiff's daughter, failed to contact Plaintiff prior to the hearing and that the referee, Salvatore Pavone, excluded Plaintiff from this hearing. Id. Plaintiff further alleges that the Wrobleskis and Steemrod negotiated an illegal custody agreement at this hearing that "deprive[d] Plaintiff of his parental rights." Id. at 10. Pursuant to this agreement, Steemrod was given custody of Plaintiff's daughter. Id. Steemrod subsequently kicked Plaintiff's daughter and another of his children out of their "court ordered primary residence." Id.

Plaintiff has recently been paroled from imprisonment for a DWI offense. See Mot. at 3; Dkt. No. 10.

## III. PI MOTION

### A. Legal Standard

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." Patton v. Dole, 806 F.2d 24, 28 (2d Cir. 1986). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the . . . merits.'" Candelaria v. Baker, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (quoting Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994)). To prevail on a motion for preliminary injunctive relief, a movant must show: (1) irreparable harm; and (2) either (a) a likelihood of success on the merits of the claim, or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in favor of the moving party. D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.,

3

465 F.3d 503, 510 (2d Cir. 2006). A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Moore v. Consol. Edison Co., 409 F.3d 506, 510 (2d Cir. 2005).

**B. Discussion**

   *1. False Complaints*

Plaintiff seeks to enjoin Wrobleskis and Steemrod from falsely reporting "any incidents" regarding Plaintiff, his daughter, his wife, or "any persons who are part of [Plaintiff's] or his wife['s] immediate family." PI Mot. at 1; Dkt. No. 2-2 ("Memorandum") at 1.[1] Plaintiff supports his contention that the Wrobleskis and Steemrod are likely to make such reports by pointing to prior reports the Wrobleskis have made regarding Plaintiff's alleged drunk driving and mistreatment of his children. See generally Mem.; Compl. But Plaintiff has not shown either a likelihood of success on the merits or a sufficiently serious question going to the merits. Plaintiff's Complaint brings claims exclusively under 42 U.S.C. § 1983. See generally Compl. Section 1983, however, applies only to defendants "acting under color of state law." Sykes v. Bank of Am., 723 F.3d 399, 406 (2d Cir. 2013). The arrest and conviction of Plaintiff for diving while intoxicated, the various family court orders restricting Plaintiff's parental rights, and the investigations of Plaintiff for child abuse constitute actions under color of state law. So too would returning Plaintiff to prison for a parole

---

[1] Plaintiff seeks, pursuant to Federal Rule of Civil Procedure 65(b)(1), the issuance of a preliminary injunction without notice to Defendants. See PI Mot. at 1. While a preliminary injunction cannot issue without notice, see AIH Acquisition Corp., LLC v. Alaska Indus. Hardware, Inc., 105 F. App'x 301, 305 (2d Cir. 2004); FED R. CIV. P. 65(a)(1), a temporary restraining order ("TRO") may so issue. See FED R. CIV. P. 65(b)(1). The standard for granting a preliminary injunction and a TRO is the same, Javino v. Pergament, No. 13-CV-1951, 2013 WL 1952639, at *1 (E.D.N.Y. May 10, 2013), but a party seeking a TRO without notice bears additional burdens. See FED R. CIV. P. 65(b)(1)(A)-(B). Thus, the Court's determination that Plaintiff is not entitled to a preliminary injunction necessarily means that he is not entitled to a TRO, with or without notice.

4

violation, which Plaintiff alleges will happen if the Wrobleskis and Steemrod make false reports to his parole officer or other law enforcement officials. See Mot. at 3. This does not mean, however, that the Wrobleskis' reports, which allegedly led or might lead to these actions, are themselves actions taken under the color of state law. A nominally private entity acts under color of state law:

> (1) [when] the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

Arar v. Ashcroft, 585 F.3d 559, 637-28 (2d Cir. 2009) (second and third alterations in original) (quoting Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008)). Conclusory allegations that a private entity acted in concert with a state actor are insufficient to establish a § 1983 cause of action against that private entity. Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992).

Plaintiff has not alleged sufficient facts suggesting that the Wrobleskis' reports meet any of the color-of-state-law tests. The first and third tests are clearly not met: Plaintiff has offered no evidence that any state entity compelled the Wrobleskis to make their reports, and the reporting of crimes and child abuse is a private function. See generally Compl.; Mem.

Nor can Plaintiff meet the second test. Even a causal relationship between a private party's complaints to state actors and subsequent state action is insufficient to establish the "close nexus" required to impose § 1983 liability on the private party. See Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999) ("[Providing] information to a police officer does not by itself make [defendant] a joint participant in state action under Section 1983."); Butler v.

5

Goldblatt Bros., Inc., 589 F.2d 323, 327 (7th Cir. 1978) (finding that a private party's "mere act of furnishing information to law enforcement officers," who then proceeded to "act[] on their own initiative in arresting plaintiff," did not constitute joint activity); Khaja-Moinuddin v. City of New York, No. 09-CV-646, 2010 WL 3861003, at *4 (E.D.N.Y. Sept. 28, 2010) ("[Plaintiff] only alleges that [defendant] made a false claim to the police, upon which he was arrested. Such allegations are insufficient to render [defendant] a state actor for § 1983 purposes."); Johns v. Home Depot U.S.A., Inc., 221 F.R.D. 400, 405 (S.D.N.Y. 2004) (finding that a private party who called for police assistance was not a state actor under § 1983, even though the call was allegedly false and caused plaintiff's detainment); see also King v. Massarweh, 782 F.2d 825, 829 (9th Cir. 1986) (holding that a private party is not liable under § 1983 causation principles "absent some showing that [she] had some control over state officials' decision to arrest a person or search his residence").

While a conspiracy with a state entity may constitute sufficiently joint action, see Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999), Plaintiff has not alleged facts suggesting the existence of such a conspiracy. He makes only one non-conclusory conspiracy argument: Emergency Communications knew that Ms. Wrobleski's calls were made from her home phone, and therefore knew that she was not personally observing Plaintiff driving as she claimed, but nevertheless dispatched officers to investigate and arrest Plaintiff. See Compl. at 5-6. But Plaintiff has offered no evidence, beyond his own assertions and references to unproduced call transcripts, that Ms. Wrobleski called from a landline phone or that she told Emergency Communications that she was personally observing Plaintiff. See id. at 6; Compl. Ex. D; Dkt. No 2-1 at 2.[2] Moreover, even if Plaintiff could show that Emergency Communications knew Ms. Wrobleski was not

---

[2] The pagination corresponds to the page numbers assigned by ECF.

personally observing Plaintiff as she claimed and was instead relaying information received from Mr. Wrobleski, there is nothing unreasonable or conspiracy-indicating about a decision to dispatch officers regarding a second-hand DWI report. Finally, Plaintiff has acknowledged that Mr. Wrobleski observed Plaintiff's driving and made a call to Emergency Communications from his cellular phone, thereby providing a first-hand-report basis for the dispatch decision. See Compl. at 5-6. Thus, nothing about the Wrobleskis' calls or the manner in which they were handled suggests that the Wrobleskis were conspiring with Emergency Communications or any other state entity.

Plaintiff otherwise alleges no more than that the Wrobleskis made putatively false DWI and child-abuse and -neglect complaints that, in some cases, were acted upon by state entities. See generally Mem; Compl. This is insufficient to demonstrate a conspiracy. See Fisk v. Letterman, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) (holding that the plaintiff's allegations were insufficient to state a claim for conspiracy under § 1983 where "[a]t most, the plaintiff's allegations . . . could be construed as supporting an inference that [the private individual] attempted to influence the state actors' decision"). Moreover, as evidence of the falsity of the Wrobleskis' child-abuse complaints to CPS, Plaintiff points to a CPS report stating that some of the Wrobleskis' complaints were unfounded. See Compl. at 4; Dkt. No. 2-1 at 16. CPS's determination substantially undercuts Plaintiff's assertion that CPS and the Wrobleskis engaged, or are engaging, in a conspiracy.

Plaintiff has not alleged that Steemrod has ever made any report or that she has any connection to any state entity. See generally Compl. He has therefore not shown a likelihood that, even if Steemrod were to make false reports, they would constitute action under color of state law.

Because Plaintiff has offered insufficient evidence that the reports he seeks to enjoin would constitute action under the color of state law, he has failed to demonstrate a likelihood of success or

7

a sufficiently serious question going to the merits. Cf. Blanksteen v. N.Y. Mercantile Exch., 879 F. Supp. 363, 371 (S.D.N.Y. 1995) (finding that a plaintiff bringing a Sherman Act claim had failed to show a likelihood of success on the merits or a sufficiently serious questions going to the merits where she had not sufficiently alleged concerted action). The PI Motion, to the extent it seeks to enjoin the Wrobleskis and Steemrod from making false reports, is denied.

### 2. *Dissipation of Assets*

Plaintiff argues that he will suffer irreparable harm—the rendering uncollectible of any money judgment obtained in this action—unless the Wrobleskis are enjoined from selling their "real estate properties on Giminski Drive in Syracuse," which Plaintiff alleges are "slated to be bought out by the Destiny U.S.A. project." Mem. at 3. Plaintiff asserts that the Wrobleskis intend to sell their remaining assets and move to Virginia, and seeks to broadly enjoin the Wrobleskis from any "depletion or dissipation of their assets." Mem. at 3; Mot. at 1. An injunction preventing the sale or transfer of assets may issue where: (1) the assets are the subject of the litigation; or (2) there is an imminent likelihood that the defendant will become judgment proof. See Chemical Bank v. Haseotes, 13 F.3d 569, 573 (2d Cir. 1994) ("[A]n injunction may issue to stop a defendant from dissipating assets in an effort to frustrate a judgment."); Republic of Philippines v. Marcos, 806 F.2d 344, 357 (2d Cir. 1986) ("Of course a party is not entitled preliminarily to enjoin the transfer of property that will be irrelevant to a final judgment. However, preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible." (citation omitted)); Arrey v. Gov't of Republic of Cameroon, No. 89 Civ. 2936, 1991 WL 84660, at *2 (S.D.N.Y. May 13, 1991) ("[A] connection between the frozen assets and the underlying litigation is crucial"). "In order to grant injunctive relief to insure judgment satisfaction, the requested relief must coincide with strong

evidence indicating the possibility of asset depletion." Arrey, 1991 WL 84660, at * 2.

Here, the assets that are the subject of the PI Motion—the Wrobleskis' properties—are not the subject of Plaintiff's Complaint. And Plaintiff has not made the requisite showing that the Wrobleskis are likely to become judgment proof. Were the Wrobleskis to move themselves and their assets to Virginia, Plaintiff might have a more difficult time collecting on a potential judgment. But such a move would certainly not render a judgment uncollectible. See 28 U.S.C. § 1963 (providing a mechanism by which a plaintiff may enforce a federal court judgment in any district). And while Plaintiff's allegations that the Wrobleskis failed to provide Plaintiff's daughter with her Social Security benefits, canceled her medical insurance, and have otherwise mistreated her may bear upon the Wrobleskis' "untrustworthy character," these allegations do not demonstrate a sufficient likelihood that the Wrobleskis have acted or will act to shield their assets from a potential money judgment. Mem. at 3. The PI Motion is therefore denied.

## IV. REPORT-RECOMMENDATION

### A. Legal Standard

A district court must review *de novo* any objected-to portions of a magistrate judge's report-recommendation or specific proposed findings or recommendations therein and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b); accord FED. R. CIV. P. 72(b); see also Morris v. Local 804, Int'l Bhd. of Teamsters, 167 F. App'x 230, 232 (2d Cir. 2006); Barnes v. Prack, No. 11-CV-0857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013). If no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Chylinski v. Bank of Am.,

9

N.A., 434 F. App'x 47, 48 (2d Cir. 2011); Barnes, 2013 WL 1121353, at *1; Farid v. Bouey, 554 F. Supp. 2d 301, 306-07 & n.2 (N.D.N.Y. 2008); see also Machicote v. Ercole, No. 06 Civ. 13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument.").

### B. Discussion

Judge Peebles recommends that Plaintiff's claims against Defendant the State of New York ("New York") be dismissed on sovereign immunity grounds. See Report-Rec. at 7-8. Plaintiff objects to this portion of the Report-Recommendation. See Dkt. No. 8 ("Objections") at 3-5. Plaintiff acknowledges that, with respect to § 1983 claims, New York has waived its sovereign immunity only to the extent that it permits such claims to be brought in the New York Court of Claims ("Court of Claims"). See Gross v. New York, 428 F. App'x 52, 53 (2d Cir. 2011); Objs. at 3-4. But he argues that, because he served a verified notice of claim and New York failed to respond within 60 days, "New York State is deemed to have waived sovereign immunity in all respects and has consented to [P]laintiff's claim of contribution against New York State in the [f]ederal forum, and thus [P]laintiff's claim is not barred by the Eleventh Amendment." Objs. at 4-5. Plaintiff has offered no authority for this proposition, and appears to be seeking to impose on the State of New York timeliness requirements formerly applicable to Court of Claims *plaintiffs*. See In re Claim of Millis, No. 91107, 2001 WL 856465, at *1 n.3 (N.Y. Ct. Cl. Apr. 26, 2001); Garr v. State, 423 N.Y.S.2d 407 (Ct. Cl. 1979). This he cannot do. See Doe v. Pataki, 481 F.3d 69, 78 (2d Cir. 2007) ("[A] state will not be deemed to have waived its sovereign immunity unless the waiver

10

is express and unequivocal." (internal quotation marks omitted)).

Nor does Plaintiff's allegation of Fourteenth Amendment due process violations render New York's sovereign immunity abrogated. See Santiago v. N.Y.S. Dep't of Corr. Servs., 945 F.2d 25, 30 (2d Cir. 1991); Gage v. N.Y.S. Dep't of Health, 204 F. Supp. 2d 399, 402 (N.D.N.Y. 2002); Objs. at 5-6. The Court therefore, as recommended, dismisses Plaintiff's claims against New York. The Court has reviewed the remainder of the Report-Recommendation for clear error and finds none. The Report-Recommendation is therefore adopted in full.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiffs' PI Motion (Dkt. No. 2) is **DENIED**; and it is further

**ORDERED**, that the Report-Recommendation (Dkt. No. 5) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Plaintiff's claims against the State of New York are **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: October 16, 2013
          Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge