UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PAUL TOPOLSKI,

                          Plaintiff,

       -against-                                5:13-CV-0872 (LEK/DEP)

SUSAN WROBLESKI; *et al.*,

                          Defendants.

---

**MEMORANDUM-DECISION and ORDER**

**I.    INTRODUCTION**

In this civil rights action, Plaintiff Paul Topolski ("Plaintiff") alleges that Defendants deprived him of his parental and other constitutional rights in violation of 42 U.S.C. § 1983. See generally Dkt No. 1 ("Complaint"). Presently before the Court are Motions to dismiss filed by Defendants Susan Wrobleski ("Ms. Wrobleski") and Michael Wrobleski ("Mr. Wrobleski") (collectively, the "Wrobleskis"); Salvatore Pavone ("Pavone") and Sheree Jackson ("Jackson") (collectively, the "Family Court Defendants"); Onondaga County and Onondaga County Department of Emergency Communications ("Emergency Communications") (collectively, the "County Defendants"); and Zachary L. Karmen ("Karmen"). Dkt. Nos. 22 ("Karmen Motion"); 30 ("Wrobleski Motion"); 36 ("County Motion"); 47 ("Pavone and Jackson Motion"). Plaintiff has filed a Motion for a default judgment as to Defendant Aliza Steemrod ("Steemrod"). Dkt. No. 63 ("Motion for Default Judgment"). For the following reasons, the Motions to dismiss are granted, the Motion for Default Judgment is denied, Plaintiff's claim against Steemrod is dismissed pursuant to 28 U.S.C. § 1915(e)(2), and the Complaint is dismissed in its entirety.

## II. BACKGROUND[1]

Plaintiff alleges that the Wrobleskis, his former in-laws, have engaged in a "continuous conspiracy for the purpose of depriving [P]laintiff of his parental rights and his right to life and liberty." Compl. at 3. According to Plaintiff, the Wrobleskis began plotting in 2000 to have his children taken from his custody. Id. at 4. The Wrobleskis proceeded to lodge a number of putatively baseless complaints with Onondaga County Child Protective Services ("CPS") regarding Plaintiff's treatment of his children. Id. In 2000, Mr. Wrobleski allegedly followed Plaintiff around "in disguise" and made false reports to the Cicero Police Department that led to Plaintiff's arrest for driving while intoxicated ("DWI") and endangering his children's welfare, although the charges were later dismissed for "legal insufficiency." Id.

In 2003, Plaintiff's children were placed in the Wrobleskis' care after the Wrobleskis reported that Plaintiff had left the children alone; Plaintiff claims that his babysitter was late and his girlfriend's daughter watched the children until the babysitter arrived. Id. In 2008, following Plaintiff's release from prison on DWI charges, the Onondaga Family Court issued an order giving Plaintiff joint custody of, and certain visitation rights with, his children. Id. at 4-5.

In August 2009, Ms. Wrobleski, even though she knew that Plaintiff had been in regular contact with his children, reported otherwise to the Orchard Park Police Department ("Orchard Park") and requested that Orchard Park perform multiple "welfare checks" on Plaintiff. Id. at 5.

---

[1] Because this matter is before the Court on motions to dismiss, the allegations of the Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

2

The following month, Plaintiff was arrested for DWI, which he claims was the result of four calls from the Wrobleskis to Emergency Communications operators: one by Mr. Wrobleski, who "stalked" Plaintiff in disguise on the highway, and three by Ms. Wrobleski from her home phone. Id. at 5-6. Plaintiff alleges that he was then assaulted by the Cicero police officers dispatched by Emergency Communications. Id.

On September 13, 2012, a custody hearing regarding Plaintiff's daughter was held before Onondaga Family Court referee Pavone. Id. at 9. Plaintiff alleges that Karmen, the law guardian appointed to represent Plaintiff's daughter, failed to contact Plaintiff prior to the hearing and that Pavone excluded Plaintiff from the hearing. Id. Plaintiff further alleges that the Wrobleskis and Steemrod negotiated an illegal custody agreement at this hearing that "deprive[d] Plaintiff of his parental rights," and that Pavone "authorized" this agreement. Id. at 9-10. Pursuant to this agreement, Steemrod was given custody of Plaintiff's daughter. Id. Steemrod subsequently forced Plaintiff's daughter and another of his children out of their "court ordered primary residence" and canceled Plaintiff's daughter's health insurance. Id. at 10. Plaintiff subsequently sent a request for records regarding the September 13, 2012 proceeding to Jackson, the Chief Clerk of the Onondaga Family Court. Id. Plaintiff received no response. Id.

On July 24, 2013, Plaintiff filed the Complaint and a Motion for a preliminary injunction preventing the Wrobleskis from dissipating assets needed to satisfy a judgment in this case and restraining the Wrobleskis and Steemrod from falsely reporting that Plaintiff was mistreating his children or driving while intoxicated. See Compl.; Dkt. No. 2 ("PI Motion"). The Court denied the PI Motion in light of Plaintiff's failure to demonstrate a likelihood that: (1) the Wrobleskis and Steemrod were acting under color of state law as required by § 1983; or (2) the Wrobleskis would

3

render a judgment uncollectible in the absence of a preliminary injunction.  See generally Dkt. No. 11 ("October Order") at 3-9.  The October Order also approved and adopted a Report-Recommendation and Order by the Honorable David E. Peebles, U.S. Magistrate Judge, recommending that Plaintiff's claim against the State of New York be dismissed pursuant to 28 U.S.C. § 1915(e) on sovereign immunity grounds but that his claims against other Defendants be accepted for filing.  See id. at 9-11; Dkt. No. 5 ("Report-Recommendation").  The Motions to dismiss and Motion for default judgment followed.  See generally Docket.

## III. MOTIONS TO DISMISS

### A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]."  Twombly, 550 U.S. at 556.  "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice.  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Thus, although a court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff, see Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006), an action is subject to dismissal where the court is unable to infer more than the "sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

4

### B. County Motion

The County Defendants correctly assert that Plaintiff has failed to allege a basis for liability under § 1983. Dkt. No. 36-2 ("County Memorandum") at 10. "Municipalities, including counties, can be liable under § 1983 if the municipality itself can be said to have been responsible for the constitutional violation." Sheriff's Silver Star Ass'n of Oswego Cnty., Inc. v. Cnty. of Oswego, 56 F. Supp. 2d 263, 266 (N.D.N.Y. 1999) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). "Municipalities may be held liable for violations of constitutional rights under Section 1983 if 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Drew v. Connolly, 536 F. App'x 164, 165 (2d Cir. 2013) (quoting Monell, 436 U.S. at 690). "Additionally, a plaintiff may hold a municipality liable for a constitutional violation as a result of that municipality's failure to train its employees." Drew, 536 F. App'x at 165 (citing City of Canton v. Harris, 489 U.S. 378, 387 (1989)). "A plaintiff may establish a municipal policy or custom by showing that the municipality's failure to train its officers 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" Drew, 536 F. App'x at 165 (quoting Anthony v. City of New York, 339 F.3d 129, 140 (2d Cir. 2003)).

Plaintiff alleges that dispatchers at Emergency Communications improperly credited the Topolskis' calls and sent officers to investigate Plaintiff. See Compl. at 5-6. But he has not argued, let alone alleged facts plausibly suggesting, that the dispatchers' actions were taken pursuant to any policy or custom of the County Defendants or resulted from a failure to train. See generally id.; Dkt. No. 46 ("Response to County Motion") at 8. As there is no basis for liability under § 1983, the County Motion is granted.

5

**C. Pavone and Jackson Motion**

   *1. Pavone*

Plaintiff challenges Pavone's September 13, 2012 "authoriz[ation]" in "open court" of a custody agreement between the Wrobleskis and Steemrod, and Pavone's failure to include Plaintiff in the "proceeding" that produced that agreement. Compl. at 9. The Complaint alleges that Pavone thereby violated a pre-existing Onondaga Family Court custody order and Plaintiff's parental and due process rights. Id. Pavone responds that Plaintiff's claim is barred by the doctrine of absolute judicial immunity. Dkt. No. 60 ("Pavone and Jackson Memorandum") at 1-3.[2]

Judges are generally "immunized . . . from damage claims arising out of their judicial acts." Tucker v. Outwater, 118 F.3d 930, 932 (2d Cir. 1997); see also McKnight v. Middleton, 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions"), aff'd, 434 F. App'x 32 (2d Cir. 2011) (citing Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009)). "Furthermore, a court appointed referee is similarly entitled to absolute immunity for her official acts." Renner v. Stanton, No. 13-CV-01676, 2013 WL 1898389, at *3 (E.D.N.Y. May 7, 2013) (citing Wilson v. Wilson-Polson,

---

[2] Pavone also argues that the Court lacks subject matter jurisdiction over Plaintiff's claim pursuant to the domestic relations exception. See Pavone and Jackson Mem. at 6. This exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992). It is "very narrow" and does not "strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree . . . or a child custody decree." Williams v. Lambert, 46 F.3d 1275, 1283 (2d Cir. 1995). Here, Plaintiff seeks only money damages, not the issuance or modification of a child custody decree. See generally Compl.; see also Dkt. No. 57 ("Response to Pavone and Jackson Motion") at 5-6. "[T]herefore, the domestic relations exception has no bearing on these claims." McKnight v. Middleton, 699 F. Supp. 2d 507, 519 (E.D.N.Y. 2010), aff'd, 434 F. App'x 32 (2d Cir. 2011).

446 F. App'x. 330, 331 (2d Cir. 2011)). Judicial immunity is so broad that judges and referees "are not liable to civil actions for their judicial acts, even when such acts . . . are alleged to have been done maliciously or corruptly." Stump v. Sparkman, 435 U.S. 349, 356 (1978) (quotation marks omitted); see also Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985) (noting that judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff").

However, "[e]ven judicial immunity, which provides judges with very broad protection, may be overcome." Gross v. Rell, 585 F.3d 72, 82 (2d Cir. 2009). Immunity is inapplicable if the judge or referee: (1) did not perform the challenged action in her judicial capacity; or (2) "acted in the 'clear absence of all jurisdiction.'" Tucker, 118 F.3d at 932 (quoting Stump, 435 U.S. at 356-57 (1978)). Plaintiff argues that both exceptions are met here. See Dkt. No. 57 ("Response to Pavone and Jackson Motion") at 7-9.

### a. Judicial Capacity

"'[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself,' such as 'whether it is a function normally performed by a judge,' and 'whether [the parties] dealt with the judge in his judicial capacity.'" Bobrowsky v. Yonkers Courthouse, 777 F. Supp. 2d 692, 712 (S.D.N.Y. 2011) (quoting Stump 435 U.S. at 362). Plaintiff argues that, because Pavone "sanctioned" only an "off the record informal agreement" between Steemrod and the Wrobleskis, he did not act in his judicial capacity. Resp. to Pavone and Jackson Mot. at 9. But "[t]he fact that a proceeding is 'informal and ex parte . . . has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." Bliven, 579 F.3d at 210; see also Bobrowsky, 777 F. Supp. 2d at 714 ("[T]he Supreme Court has generally concluded that acts arising

7

out of, or related to, individual cases before the judge are considered judicial in nature." (citing Bliven, 579 F.3d at 210)). As alleged, Pavone's custody-arrangement authorization took place during a "family court proceeding" at the Onondaga County Courthouse and was undertaken "under color of law" and in Pavone's capacity as a "final decisionmaker." Compl. at 9, 15; see also Dkt. No. 51 (alleging that Pavone "*awarded* custody of [Plaintiff's daughter] to Defendant Steemrod") (emphasis added). The place, procedural context, and subject matter of Pavone's authorization render it an act taken in his judicial capacity.[3]

### b. Clear Absence of All Jurisdiction

Plaintiff also contends that Pavone acted in the clear absence of all jurisdiction. Resp. to Pavone and Jackson Mot. at 8-9. To defeat judicial immunity, a plaintiff must demonstrate that the challenged judicial action was not merely taken "in excess of jurisdiction," but was taken in the "clear absence of all jurisdiction." Tucker, 118 F.3d at 934. This requirement has both objective and subjective elements: "a judge will be denied immunity only where it appears, first, that the judge acted in the clear absence of jurisdiction, and second, that the judge must have known that he or she was acting in the clear absence of jurisdiction." Id. "[T]he scope of the judge's jurisdiction must be construed broadly when the issue is the immunity of the judge." Stump, 435 U.S. at 356. This exacting standard is met where, *e.g.*, a court of specific jurisdiction exercises jurisdiction over a matter far outside its jurisdictional grant, see, e.g., Tucker, 118 F.3d at 934 ("Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons,

---

[3] Moreover, even if the authorization was merely an extra-judicial, informal expression of Pavone's purely personal approval that bore no relationship to his judicial role, Plaintiff could not demonstrate that Pavone acted under color of state law as required for § 1983 liability. See Oct. Order at 4-8.

8

should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of usurped authority."), or where a statute plainly divests a court of jurisdiction over the performance of a certain act, see, e.g., Maestri v. Jutkofsky, 860 F.2d 50 (2d Cir. 1988).

Plaintiff argues that his wife Deborah Topolski's withdrawal of her custody petition prior to Pavone's authorization of the custody arrangement rendered custody "no longer at issue" and thereby divested Pavone of jurisdiction. Resp. to Pavone and Jackson Mot. at 8. But a party to a family court proceeding "cannot withdraw the proceeding without the court's approval." 45 N.Y. JUR. 2D DOMESTIC RELATIONS § 473. Here, according to Plaintiff, Pavone's authorization of the custody arrangement took place after Deborah Topolski withdrew her petition but *before* Pavone issued an order of dismissal. Compl. at 10; Resp. to Pavone and Jackson Mot. at 8. Thus, the proceeding had not terminated prior to Pavone's challenged actions. And even if the authorization had taken place after the proceeding ended, courts that have previously issued a custody determination have "continuing jurisdiction over the determination" unless a judicial finding is made that the child, parents, and custodians have no connection to New York. N.Y. DOM. REL. LAW § 76-a. Here, Plaintiff alleges that the Onondaga Family Court had previously made a custody determination. See Compl. at 5, 10, 15; Dkt. No. 2-1 at 29-30.[4] Pavone, as an Onondaga Family Court referee, therefore had continuing jurisdiction; Plaintiff has not alleged that the conditions for the cessation of continuing jurisdiction were met. See generally Compl.; Resp. to Pavone and Jackson Mot. Thus, Plaintiff has failed to show that Deborah Topolski's withdrawal of the petition

---

[4] The pagination corresponds to the page numbers assigned by ECF.

9

rendered Pavone's actions taken in excess of jurisdiction, let alone taken in the clear absence of all jurisdiction.

That Plaintiff was absent from the proceeding, see Compl. at 9, also did not deprive Pavone of jurisdiction. See N.Y. DOM. REL. LAW § 76 ("Physical presence of, or personal jurisdiction over, a party . . . is *not* necessary . . . to make a child custody determination." (emphasis added)). Finally, even if, as Plaintiff alleges, Pavone's actions somehow contravened a prior custody order, see Compl. at 9-10; Resp. to Pavone and Jackson Mot. at 8-9, such a violation does not amount to an action taken in the clear absence of jurisdiction, cf. Ryan v. Cholakis, No. 13-CV-1451, 2014 WL 803776, at *2 (N.D.N.Y. Feb. 25, 2014) ("Generally, violating a stay, in and of itself, does not appear to be an act in the clear absence of jurisdiction."). Pavone and Jackson's Motion, to the extent it seeks dismissal of Plaintiff's claim against Pavone, is therefore granted.

*2. Jackson*

Plaintiff alleges that he sent a request for records related to the September 13, 2012 proceeding to Jackson, the Chief Clerk of the Onondaga Family Court, but received no response. Compl. at 10. He now seeks damages for Jackson's failure to respond. Id. at 16. Jackson argues that she is entitled to absolute immunity. See Pavone and Jackson Mem. at 4-6. "Judicial immunity may extend to persons other than a judge 'who perform functions closely associated with the judicial process.'" McKnight, 699 F. Supp. 2d at 525 (quoting Cleavinger, 474 U.S. at 200). However, "absolute judicial immunity covers only certain functions performed by court clerks." McKnight, 699 F. Supp. 2d at 507. Where a clerk "implement[s] judicial decisions," performs tasks under the "direction or . . . supervision of a judicial officer," or acts "pursuant to the established practice of the court," she is entitled to absolute immunity. Id. However, "where a court clerk

10

performs 'ministerial, non-judicial duties,' or 'purely administrative tasks,' only qualified, good faith immunity attaches." Id. (quoting Isasi v. Heinemann, No. 08-CV-5284, 2009 WL 159601, at *2 (E.D.N.Y. Jan. 22, 2009)).

It is not clear from the Complaint that Jackson's non-provision of the requested records was at the behest of a judge or was taken pursuant to established court procedures. See generally Compl. Nevertheless, she is entitled to qualified immunity. "Under this immunity, clerks are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Isasi, 2009 WL 159601, at *2 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The right alleged to have been violated must be clearly established at a level of specificity such that 'a reasonable official would understand that what he is doing violates that right.'" Cahill v. O'Donnell, 7 F. Supp. 2d 341, 350 (S.D.N.Y. 1998) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Thus, "[t]o be deprived of the defense of qualified immunity, the violation of plaintiff's rights must be so clear that no reasonable public official could have believed that his actions did not violate plaintiff's rights." Cahill, 7 F. Supp. 2d at 350 (citing Anderson, 483 U.S. at 640).

Here, Plaintiff has pointed to no authority clearly establishing that a clerk's failure to provide requested family court records violates parental or due process rights. See Jackson and Pavone Resp. at 10-11. Nor has the Court found such authority. Thus, Jackson is entitled to qualified immunity, and Pavone and Jackson's Motion, to the extent it seeks dismissal of Plaintiff's claim against Jackson, is granted.

**D. Karmen Motion**

Plaintiff alleges that Karmen, the law guardian for his daughter, violated the existing custody order and Plaintiff's constitutional rights by failing to "contact and/or consult" with Plaintiff prior to the September 13, 2012 proceeding and by "advocat[ing]" the custody arrangement reached by the Wrobleskis and Steemrod. Compl. at 9-10. Karmen argues that he is entitled to dismissal because Plaintiff has failed to allege that Karmen acted under color of state law. See Dkt. No. 22-2 ("Karmen Memorandum") at 3-6.

Section 1983 applies only to defendants "acting under color of state law." Sykes v. Bank of Am., 723 F.3d 399, 406 (2d Cir. 2013). "The 'color of state law' requirement results in the imposition of liability only upon those who "carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" Elmasri v. England, 111 F. Supp. 2d 212, 217 (E.D.N.Y. 2000) (quoting Nat'l Collegiate Athletic Ass'n. v. Tarkanian, 488 U.S. 179, 191 (1988). A nominally private entity acts under color of state law:

> (1) [when] the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").

Arar v. Ashcroft, 585 F.3d 559, 637-28 (2d Cir. 2009) (second and third alterations in original) (quoting Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008)). Conclusory allegations that a private entity acted in concert with a state actor are insufficient to establish a § 1983 cause of action against that private entity. Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992).

12

Plaintiff has not adequately alleged that Karmen acted under color of law. As alleged, Karmen was a law guardian appointed to represent Plaintiff's daughter. See Compl. at 9-10. Plaintiff asserts that Karmen's appointment by Pavone and his receipt of compensation from New York renders him a joint actor with Pavone. See Karmen Resp. at 6-8. This is not so. "When considering the state action requirement of a court appointed representative, courts focus on whether the duty of the person appointed runs to the state or the individual client." Storck v. Suffolk Cnty. Dep't of Soc. Servs., 62 F. Supp. 2d 927, 941 (E.D.N.Y. 1999). Thus, a law guardian, whose duty of representation runs solely to the child, does not act under color of law even though she is appointed and paid by state actors. See id. ("Neither the fact that the law guardians were appointed by a New York State court nor the fact that they were paid by state funds is sufficient to render these individuals state actors. . . . [T]he independent judgment that these individuals were bound to exercise on behalf of their clients further negates a finding that they acted under color of state law."); Parent v. New York, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011) ("[A]lthough appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent."), aff'd, 485 F. App'x 500 (2d Cir. 2012); Elmasri, 111 F. Supp. at 221 (finding that court appointed legal guardian in custody proceedings was not a state actor, despite her appointment by a New York state court payment by state funds).

While a conspiracy with a state entity may constitute sufficiently joint action, see Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999), Plaintiff offers entirely conclusory allegations regarding a conspiracy between Karmen and certain state entities. See Compl. at 9-10. This does not suffice. See Spear, 954 F.2d at 68. The Karmen Motion is therefore granted.

13

### E. Wrobleski Motion

Plaintiff brings a claim against the Wrobleskis arising out of: (1) false reports they allegedly made regarding Plaintiff's alleged drunk driving and mistreatment of his children; and (2) the September 13, 2012 custody arrangement between the Wrobleskis and Steemrod. See generally Compl. The Wrobleskis seek dismissal for failure to allege that they acted under color of state law. See generally Dkt. No. 30-1 ("Wrobleski Memorandum").

Plaintiff argues that Emergency Communications' decision to dispatch police officers despite its awareness that Susan Wrobleski was reporting Plaintiff's drunk driving from a landline phone establishes the requisite joint action. See Dkt. No. 51 ("Response to Wrobleski Motion") at 5-6; Compl. at 13-14. But as the October Order explained, this does not suffice. First, "[e]ven a causal relationship between a private party's complaints to state actors and subsequent state action is insufficient to establish the 'close nexus' required to impose § 1983 liability on the private party." Oct. Order at 5. Second,

> even if Plaintiff could show that Emergency Communications knew Ms. Wrobleski was not personally observing Plaintiff as she claimed and was instead relaying information received from Mr. Wrobleski, there is nothing unreasonable or conspiracy-indicating about a decision to dispatch officers regarding a second-hand DWI report. Finally, Plaintiff has acknowledged that Mr. Wrobleski observed Plaintiff's driving and made a call to Emergency Communications from his cellular phone, thereby providing a first-hand-report basis for the dispatch decision. See Compl. at 5-6. Thus, nothing about the Wrobleskis' calls or the manner in which they were handled suggests that the Wrobleskis were conspiring with Emergency Communications or any other state entity.

Oct. Order at 6-7.

Plaintiff also argues that the Wrobleskis acted under color of state law because: (1) they formed a custody arrangement with Karmen; and (2) Pavone authorized and approved that arrangement. Resp. to Wrobleski Mot. at 6-7. But as noted *supra*, Karmen was a private actor, and

14

therefore any putative joint action with Karmen cannot render the Wrobleskis actions taken under color of state law. Moreover, mere state approval, adoption, or authorization of an agreement between private parties is not sufficient to render those parties joint actors with the state. Cf. Katz v. Cellco P'ship, No. 12 CV 9193, 2013 WL 6621022, at *6 (S.D.N.Y. Dec. 12, 2013) ("[T]here is no state action in the application or enforcement of the parties' private agreement to arbitrate"); Missere v. Gross, 826 F. Supp. 2d 542, 568 (S.D.N.Y. 2011) (holding that state approval of building application did not render applicant a joint actor); Cassaboon v. Town of Somers, 359 F. Supp. 2d 320, 326 (S.D.N.Y. 2005) (holding that private property owners who merely applied for and were awarded a permit from town were not state actors); Fisk v. Letterman, 401 F. Supp. 2d 362, 377 (S.D.N.Y. 2005) (holding that the plaintiff's § 1983 allegations were insufficient where "[a]t most, the plaintiff's allegations . . . could be construed as supporting an inference that [the private individual] attempted to influence the state actors' decision"). The Wrobleskis Motion, to the extent it seeks dismissal of the claim against them, is therefore granted.[5]

---

[5] The Wrobleskis also seek an award of attorneys' fees pursuant to 42 U.S.C. § 1988. Wrobleski Mem. at 5-6. "Section 1988 permits the court, in its discretion, to award reasonable attorneys' fees to a 'prevailing party' in any action or proceeding brought to enforce the provisions of 42 U.S.C. § 1983." Nelson v. Ulster Cnty., 789 F. Supp. 2d 345, 358 (N.D.N.Y. 2010) (citing 42 U.S.C. § 1988(b)). "Although § 1988 permits a court to award attorney's fees to a prevailing defendant, public policy dictates that a court should be hesitant to make such an award because of the chilling effect it might have on § 1983 plaintiffs—the 'chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority.'" Doehr v. DiGiovanni, 8 F. Supp. 2d 172, 173 (D. Conn. 1998) (quoting Christiansburg Garment Co. v. Equal Empl't Opportunity Comm'n, 434 U.S. 412, 418 (1978)). "Accordingly, a prevailing defendant in a § 1983 action may only be awarded attorney's fees if the court finds that the plaintiff's claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Doehr, 8 F. Supp. 2d at 173 (citing Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986)). The Wrobleskis argue that Plaintiff's claim is frivolous, unreasonable, and without foundation. Wrobleski Mem. at 6. But in light of Plaintiff's *pro se* status, the gravity of the misconduct alleged in the Complaint, and the complexity of the color-of-state-law doctrine pursuant to which Plaintiff's claim against the Wrobleskis is dismissed, the Court declines to award

15

## IV. MOTION FOR DEFAULT JUDGMENT

On April 10, 2014, the Clerk of the Court granted Plaintiff's request for an entry of default as to Steemrod. Dkt. Nos. 61; 62 ("Entry of Default"). Pursuant to Federal Rule of Civil Procedure 55(c), a court may *sua sponte* set aside an entry of default pursuant to Rule 55(a) "for good cause." See Negrin v. Kalina, No. 09 CIV. 6234, 2012 WL 4074992, at *2 (S.D.N.Y. Sept. 11, 2012) ("Rule 55(c) of the Federal Rules of Civil Procedure does not refer to a motion, and the court may set aside an entry of default *sua sponte*."); Rock v. AM. Express Travel Related Servs. Co., No. 08-CV-0853, 2008 WL 5382340, at *2 n. 4 (N.D.N.Y. Dec. 17, 2008). "A district court should consider three criteria when determining under Rule 55(c) whether good cause exists to vacate an entry of default: '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'" Miller v. Madison, No. 12-CV-0874, 2013 WL 2181240, at *2 (N.D.N.Y. May 20, 2013) (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)). Willfulness requires "more than mere negligence on the part of the defendant in defaulting." Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010). To determine prejudice, a district court "must consider the effect of the delay caused by the defendant's default, such as thwarting plaintiff's recovery or remedy . . . result[ing] in the loss of evidence,

---

attorneys' fees. Cf. Doehr, 8 F. Supp. 2d at 173 ("The court finds that this case is not akin to the type of frivolous, groundless case in which a plaintiff disingenuously cloaks himself in the Civil Rights Act, and in which an award of attorney's fees to a defendant would be appropriate."). Moreover, the Court is loath to deem Plaintiff's claim against the Wrobleskis sufficiently frivolous for an award of attorneys' fees despite previously permitting that claim to survive 28 U.S.C. § 1915(e) review. See Report-Rec. at 4, 8; Oct. Order at 11; cf. Doehr, 8 F. Supp. 2d at 173 ("[G]iven that the Second Circuit stated in its opinion that plaintiff should be given the chance to have his claims heard on remand, this court finds that plaintiff's pursuit of those claims was not frivolous.").

creat[ing] increased difficulties of discovery, or provid[ing] greater opportunity for fraud and collusion." Id. (quotation marks omitted). The meritoriousness of a potential defense turns on "evidence of facts that, if proven at trial, would constitute a complete defense." Swarna, 622 F.3d at 142. "Because there is a 'preference for resolving disputes on the merits, good cause . . . should be construed generously' with any doubt as to whether a default should be vacated resolved in favor of the defaulting party." Miller, 2013 WL 2181240, at *2 (quotation marks omitted).

There is good cause to vacate the Entry of Default. First, Steemrod was not properly served until approximately three months ago. See Dkt. Nos. 53; 58. The Court finds that her delay in answering, on its own, does not amount to more than mere negligence. Second, the Court discerns no prejudice—such as the destruction of evidence or the opportunity for fraud or collusion—that would result from vacatur. Third, and most importantly, the Court finds that Steemrod has a meritorious defense: Plaintiff's failure to allege any facts indicating that Steemrod acted under color of law as required for § 1983 liability. Plaintiff alleges only that Steemrod reached a custody arrangement with the Wrobleskis that was then authorized by Karmen. See Compl. at 9-10, 14. As discussed *supra*, this does not suffice. The Court therefore vacates the Entry of Default. As an entry of default is required for the Clerk of the Court to enter a default judgment, see FED. R. CIV. P. 55(b)(1), the Motion for Default Judgment is denied.[6]

---

[6] Even if the Entry of Default Judgment were not vacated, the Motion for Default Judgment would be denied. Under Federal Rule of Civil Procedure 55(b)(1), the Clerk may enter a default judgment only where Plaintiff's "claim is for a *sum certain* or a sum that can be made *certain* by computation." (emphases added). Here, Plaintiff seeks a $600,000 judgment, but, other than dividing that total into various categories of damages, provides no basis for this figure. See Mot. for Default J.; Dkt. No. 63-1 at 2, 56. This is a far cry from a sum certain. See Bellet v. City of Buffalo, No. 03-CV-00027, 2010 WL 3522224, at *3 (W.D.N.Y. Sept. 8, 2010) ("A claim does not become certain merely because the complaint or affidavit identifies a purported total.").

## V. 28 U.S.C. § 1915 REVIEW

28 U.S.C. § 1915(e)(2) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "[t]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." Thus, although a court has a duty to show liberality toward *pro se* litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (citations omitted and emphasis in original), a court also has a responsibility to determine that a claim is viable before permitting a plaintiff to proceed with an action *in forma pauperis*. Moreover, a Court may perform § 1915(e)(2) review more than once. See 28 U.S.C. § 1915(e)(2) (noting that a court may dismiss a case "at any time"); Cusamano v. Sobek, 604 F. Supp. 2d 416, 434-35 (N.D.N.Y. 2009).

Although Plaintiff's claim against Steemrod survived initial review under § 1915(e)(2), see Report-Rec. at 8; Oct. Order at 11, the Court, upon further review, finds that dismissal is warranted. As noted *supra*, Plaintiff has failed to allege a basis for § 1983 liability. Dismissal for failure to state a claim is therefore appropriate.

## VI. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Motions (Dkt. Nos. 22; 30; 36; 47) to dismiss are **GRANTED** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Wrobleski Motion (Dkt. No. 30) is, to the extent it seeks an award of attorneys' fees and costs, **DENIED**; and it is further

**ORDERED**, that the Motion (Dkt. No. 63) for Default Judgment is **DENIED**; and it is further

**ORDERED**, that the Entry of Default (Dkt. No. 62) is **VACATED**; and it is further

**ORDERED**, that the Complaint's (Dkt. No. 1) claim against Steemrod is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1) is **DISMISSED without leave to amend**;[7] and it is further

**ORDERED**, that the Clerk of the Court close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   May 29, 2014
         Albany, NY

_Lawrence E. Kahn_
Lawrence E. Kahn
U.S. District Judge

---

[7] Leave to amend should be denied if any amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962); Rivera v. Governor of N.Y., No. 02-7962, 2004 WL 569274, at *1 (2d Cir. Mar. 23, 2004). The Court finds, in light of the deficiencies discussed *supra* and the extensive opportunity afforded Plaintiff to clarify his allegations in briefing following the Motions to dismiss and the October Order's provision of notice regarding those deficiencies, that any such amendment would be futile. Cf. Rother v. NYS Dep't of Corr. & Cmty. Supervision, 970 F. Supp. 2d 78, 91 (N.D.N.Y. 2013) (Kahn, J.) (noting that dismissal without leave to amend is often appropriate "[w]here a plaintiff has already been given notice of a claim's deficiencies and the opportunity to amend her complaint").